# EXHIBIT B

<table>
<tr><td>

DENVER DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO

Court Address:    1437 Bannock Street
Denver, CO 80202

</td><td rowspan="2">

▲COURT USE ONLY▲

</td></tr>
<tr><td>

TIMOTHY VALDEZ,

Plaintiff,

v.

UBER TECHNOLOGIES, INC. [d/b/a "Uber"]; NEUTRON HOLDINGS, INC. [d/b/a "Lime"]; SOCIAL BICYCLES, INC.; SOCIAL BICYCLES HOLDINGS INC.; and SOCIAL BICYCLES LLC [each d/b/a "JUMP"]; and ZHEJIANG OKAI VEHICLE CO., LTD.; and OKAI, INC. [each d/b/a "OKAI"].

Defendants.

</td></tr>
</table>

| | |
|---|---|
| *Attorneys for Plaintiff*:<br>Sean M. Dormer, #44962<br>Amy N. Rogers, #49266<br>Timothy M. Garvey, #42668<br>Dormer Harpring, LLC<br>3457 Ringsby Court, Unit 110<br>Denver, CO 80216<br>Phone Number: (303) 756-3812<br>Facsimile: (303) 477-7400<br>Email: attorneys@denvertrial.com | Case No: 2024CV32427<br><br>Division: /<br><br>Courtroom: 414 |

## SUMMONS

**TO THE ABOVE-NAMED DEFENDANT:**    **NEUTRON HOLDINGS, INC.**

You are hereby summoned and required to appear and defend against the claims of the Complaint filed with the court in this action, by filing with the clerk of court an answer or other response. You are required to file your answer or other

response to the attached Complaint **within 21 days** after the service of this Summons upon you, or within 35 days after this Summons is served upon you if you are outside the State of Colorado.

If you fail to file your answer or other response to the Complaint in writing with in the applicable time period, judgment by default may be rendered against you by the court for the relief demanded in the Complaint without further notice.

The following documents are served herewith: Complaint and Civil Case Cover Sheet.

DATED August 26, 2024.

DORMER HARPRING, LLC

*This pleading is filed electronically pursuant to C.R.C.P., 121 § 1-26. The original signed pleading is in counsel's file.*

By:     */s/ Sean M. Dormer*
        Sean M. Dormer, #44962
        Timothy M. Garvey, #42668
        Amy N. Rogers, #49266
        *Attorneys for Plaintiff*

2

| | |
|---|---|
| DENVER DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO<br><br>Court Address:    1437 Bannock Street<br>                  Denver, CO 80202 | DATE FILED<br>August 8, 2024 6:33 PM<br>FILING ID: 9151DDF685C1E<br>CASE NUMBER: 2024CV32427 |
| TIMOTHY VALDEZ,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC. [d/b/a "Uber"]; NEUTRON HOLDINGS, INC. [d/b/a "Lime"]; SOCIAL BICYCLES, INC.; SOCIAL BICYCLES HOLDINGS INC.; and SOCIAL BICYCLES LLC [each d/b/a "JUMP"]; and ZHEJIANG OKAI VEHICLE CO., LTD.; and OKAI, INC. [each d/b/a "OKAI"].<br><br>Defendants. | ▲ COURT USE ONLY ▲ |
| *Attorneys for Petitioner*:<br>Sean M. Dormer, #44962<br>Amy N. Rogers, #49266<br>Dormer Harpring, LLC<br>3457 Ringsby Court, Unit 110<br>Denver, CO 80216<br>Phone Number: (303) 756-3812<br>Facsimile: (303) 477-7400<br>Email: attorneys@denvertrial.com | Case No:<br><br>Division:<br><br>Courtroom: |
| **CIVIL COMPLAINT AND JURY DEMAND** | |

Plaintiff, Timothy Valdez, through his attorneys, Dormer Harpring, LLC, hereby submits his Civil Complaint and Jury Demand, and states and alleges as follows:

## INTRODUCTION

1.    In recent years, people have increasingly searched for safe, convenient, environmentally friendly alternatives to cars. In that increasing market demand, companies including Defendants Uber, Lime, JUMP, and Okai have seen an opportunity to make a lot of money, fast. Instead of inventing products that would *actually* create a balanced and effective solution, these Defendants decided to offer a bigger problem masquerading as a solution: high-wattage electric bicycle motors bolted to toys, illegally dumped into Denver and other cities, and supported by a massive lobbying and marketing effort. These are the products we now know as e-scooters. They've caused a massive increase in severe injuries, and their costs have far exceeded their claimed benefits. Under Colorado law, that makes these Defendants liable for the injuries they cause.

2.    To compound the problem, companies like Uber, Lime, and JUMP have realized they'll sell more rides if they avoid adding features that encourage safe riding. They've decided to capitalize on this realization by placing e-scooters outside bars, avoiding speed limits, and hiding rider weight warnings in places people will never look. Defendants know people make mistakes, they prey on those mistakes, and their profits increase.

3.    This case is about a severe spinal cord injury that resulted in quadriplegia. This injury was caused by a "Lime Gen4's" inability to safely roll over a small Denver-standard pothole that no reasonable person—even stone-cold sober—would likely have noticed and avoided. Tim Valdez is the injured person.

## PARTIES, JURISDICTION, AND VENUE

4.    Timothy Valdez files suit under theories of product liability in connection with the injuries, damages, and losses, he sustained on or around August 13, 2022, arising out of the use of a defective "Lime Gen4" electric scooter (the specific product involved in this case and its general model name are referred to hereinafter as the "Scooter." If it is unclear from the context whether the term refers to the specific product or the general product model, the term refers to both).

5.    At all times pertinent hereto, Plaintiff is or was a resident of Denver County, State of Colorado, with a current address of 1818 Marion Street, Apt. 708, Denver, Colorado 80218. He is a United States citizen and therefore a citizen of Colorado.

## A. Uber

6.      Upon information and belief, at all times pertinent hereto, Defendant Uber Technologies, Inc., (throughout "Defendant Uber" or "Uber") is and has been a Delaware Stock Corporation.

7.      Defendant Uber's headquarters is located at 1725 3rd St., San Francisco, CA 94158.

8.      Defendant Uber's registered agent for service of process is C T Corporation System, 7700 E. Arapahoe Rd., Ste. 200, Centennial, CO 80112-1268.

9.      Upon information and belief, Defendant Uber has voluntarily and intentionally chosen to avail itself of Colorado's market for electric scooters in each of the following ways:

   a. Maintaining facilities in Colorado;

   b. Registering with the Colorado Secretary of State for permission to do business in Colorado;

   c. Offering the Uber smartphone app to users in Colorado;

   d. Lobbying and other governmental relations efforts that have addressed issues related to the Scooter;

   e. Marketing intended to increase ridership of the Scooter;

   f. Facilitating rentals of the Product through the Uber app; although the specific Scooter involved in this case was not rented that way, it could have been;

   g. Maintaining a webpage advertising rental of the Scooter and including a link to a page specific to Denver, optimized to appear when searching, for example, "electric scooter rental Denver"; and

   h. Designing or participating in the design of the Scooter with Colorado, and specifically Denver, in mind.

10.      This Court therefore has specific personal jurisdiction over Uber for purposes of this Complaint, under, *e.g.*, *Align Corp. Ltd. v. Allister Mark Boustred*, 421 P.3d 163 (Colo. 2017), *cert. denied*, 584 U.S. 1032.

3

## B. Lime

11.  Upon information and belief, at all times pertinent hereto, Defendant Neutron Holdings, Inc., (throughout "Defendant Lime" or "Lime") is and has been a Delaware Stock Corporation.

12.  Defendant Lime's headquarters is located at 85 2nd St., Ste. 300, San Francisco, CA 94105.

13.  Defendant Lime's registered agent for service of process is CCS Global Solutions, Inc., 36 S. 18th Ave., Ste. D, Brighton, CO 80601.

14.  Upon information and belief, Defendant Lime has voluntarily and intentionally chosen to avail itself of Colorado's market for electric scooters in each of the following ways:

    a.  Maintaining facilities in Colorado;

    b.  Registering with the Colorado Secretary of State for permission to do business in Colorado;

    c.  Offering the Lime smartphone app to users in Colorado;

    d.  Lobbying and other governmental relations efforts that have addressed issues related to the Scooter;

    e.  Marketing intended to increase ridership of the Scooter;

    f.  Facilitating rentals of the Product through the Lime app;

    g.  Maintaining a webpage advertising rental of the Scooter, optimized to appear when searching, for example, "electric scooter rental Denver"; and

    h.  Designing or participating in the design of the Scooter with Colorado, and specifically Denver, in mind.

15.  This Court therefore has specific personal jurisdiction over Lime for purposes of this Complaint, under, *e.g.*, *Align Corp. Ltd. v. Allister Mark Boustred*, 421 P.3d 163 (Colo. 2017), *cert. denied*, 584 U.S. 1032.

**C. JUMP**

16.    Upon information and belief, at all times pertinent hereto, the following Defendants have been and are doing business as "JUMP" (and are referred to throughout, each individually and also collectively, as "JUMP" or the "JUMP Defendants"):

    a.    Social Bicycles, Inc., is a Delaware stock corporation;

    b.    Social Bicycles, Inc.'s headquarters is at 55 Prospect St., Ste. 304, Brooklyn, NY 11201;

    c.    Social Bicycles, Inc.'s registered agent is Mark Miretsky, 4752 California St., San Francisco, CA 94118;

    d.    Social Bicycles Holdings Inc. is a Delaware stock corporation;

    e.    Social Bicycles Holdings Inc.'s headquarters location is unknown;

    f.    Social Bicycles Holdings Inc.'s registered agent is Cogency Global Inc., 850 New Burton Rd., Ste. 201, Dover, DE 19904;

    g.    Social Bicycles LLC is either a Delaware or a Colorado limited liability company;

    h.    Social Bicycles LLC's headquarters is at 1515 3rd St., San Francisco, CA 94158;

    i.    Social Bicycles LLC's registered agent is C T Corporation System, 7700 E. Arapahoe Rd., Ste. 220, Centennial, CO 80112.

17.    Upon information and belief, the JUMP Defendants have voluntarily and intentionally chosen to avail themselves of Colorado's market for electric scooters in each of the following ways:

    a.    Maintaining facilities in Colorado;

    b.    Registering with the Colorado Secretary of State for permission to do business in Colorado;

    c.    Offering JUMP branded Scooters in Colorado;

d.  Lobbying and other governmental relations efforts that have addressed issues related to the Scooter;

e.  Marketing intended to increase ridership of the Scooter; and

f.  Designing or participating in the design of the Scooter with Colorado, and specifically Denver, in mind.

18.  This Court therefore has specific personal jurisdiction over each of the JUMP Defendants for purposes of this Complaint, under, *e.g.*, *Align Corp. Ltd. v. Allister Mark Boustred*, 421 P.3d 163 (Colo. 2017), *cert. denied*, 584 U.S. 1032.

## D. OKAI

19.  Upon information and belief, at all times pertinent hereto, the following Defendants have been and are doing business as "OKAI" (and are referred to throughout, each individually and also collectively, as "OKAI" or the "OKAI Defendants"):

a.  Zhejiang OKAI Vehicle Co., Ltd. is an entity formed under the laws of China;

b.  Zhejiang OKAI Vehicle Co., Ltd.'s name in Chinese is "浙江欧凯智行车业股份有限公司" and it's Unified Social Credit Code is 91331122577707457A.

c.  Zhejiang OKAI Vehicle Co., Ltd.'s headquarters is at 6F, Zhefu Holding Building, Cangqian Street, Hangzhou, Zhejiang Province, China;

d.  Zhejiang OKAI Vehicle Co., Ltd. does not, we believe, have a registered agent for service in the United States, but may be reached through OKAI Inc.;

e.  OKAI Inc. is a California stock corporation;

f.  OKAI Inc.'s headquarters is at 1458 E. Mission Blvd., Pomona, CA 91766;

g.  OKAI Inc.'s registered agent is Yanchen Gao, 1458 E. Mission Blvd., Pomona, CA 91766;

h. OKAI Inc. and Zhejiang OKAI Vehicle Co., Ltd., are believed to share employees and resources without regard to the divide between their corporate forms. This makes them *alter egos* of each other. Perhaps more accurately, OKAI Inc., is believed to a meaningless shell that is wholly operated and controlled by Zhejiang OKAI Vehicle Co., Ltd., such that service on one is service on both.

20. Upon information and belief, the OKAI Defendants have voluntarily and intentionally chosen to avail themselves of Colorado's market for electric scooters in each of the following ways:

a. Supplying the Scooter to the other Defendants in Colorado;

b. Offering OKAI-branded scooters and electric bicycles for sale to Coloradoans in general, including through a website that accepts orders for shipment directly to Colorado;

c. Advertising itself online as a "partner" of Lime, with knowledge that Lime operates in Colorado; and

d. Designing or participating in the design and/or manufacture of the Scooter with Colorado, and specifically Denver, in mind.

21. This Court therefore has specific personal jurisdiction over each of the OKAI Defendants for purposes of this Complaint, under, *e.g.*, *Align Corp. Ltd. v. Allister Mark Boustred*, 421 P.3d 163 (Colo. 2017), *cert. denied*, 584 U.S. 1032.

### E. Generally

22. Upon information and belief, at all times pertinent hereto, Defendants engaged in a formal or informal joint venture that was intended to place and that did place the subject Scooter in the Denver metro area with the intent that it would be utilized there by public consumers, and was in fact utilized by Plaintiff.

23. Pursuant to C.R.S. 13-1-124(1)(a), this Court has personal jurisdiction over Defendants because they transact business in the State of Colorado.

24. This Court has specific personal jurisdiction over all Defendants named for the purposes of this Complaint because, among other reasons, Defendants placed the subject Scooter into the stream of commerce with the expectation that it would be utilized by consumers in the Denver metro area, and was in fact utilized by Plaintiff.

7

25.    Pursuant to C.R.S. 13-1-124(1)(b), this Court also has personal jurisdiction over Defendants because they committed one or more tortious acts in the State of Colorado.

26.    Venue is proper pursuant to C.R.C.P. 98(c) as Denver County is the venue in which at least some of the tortious conduct occurred and because Defendants have caused harm to Plaintiff, who resides in Denver, Colorado.

## FACTUAL ALLEGATIONS

27.    Plaintiff realleges and incorporates by reference all paragraphs above as though fully set forth below.

28.    Defendant Lime deploys electric scooters into the public, including in Denver, Colorado, under the guise of an environmentally friendly alternate mode of transportation.

29.    Upon information and belief, electric scooters first appeared on a large scale in Denver in May 2018, when two scooter operators deployed their fleets without authorization to do so from Denver's Department of Transportation & Infrastructure (hereinafter "DOTI" – f/k/a Denver Public Works).[1]

30.    Upon information and belief, in June 2018, DOTI ordered scooter operators to suspend their operations in the public right of way and did not permit commercial scooter operation while the Dockless Mobility Pilot Permit Program was developed.[2]

31.    Upon information and belief, after initially denying scooter operations, the City and County of Denver permitted the operation of electric scooters in 2018 through the Shared Micromobility Pilot Program. Over the course of the pilot, over four million trips were taken in Denver, averaging over four thousand trips per day.[3]

---

[1] www.denvergov.org/files/assets/public/v/2/doti/documents/programsservices/dockless-mobility/dockless-mobility-pilot-final-report.pdf

[2] www.denvergov.org/files/assets/public/v/2/doti/documents/programsservices/dockless-mobility/dockless-mobility-pilot-final-report.pdf

[3] https://www.denvergov.org/Government/Agencies-Departments-Offices/Agencies-Departments-Offices-Directory/Department-of-Transportation-and-Infrastructure/Programs-Services/Transit/Micromobility-Program#:~:text=In%202021%2C%20Denver%20City%20Council,a%20combined%20400%2B%20parking%20stations.

32. Upon information and belief, in 2021, Denver City Council approved the City to move ahead with five-year licensing agreements to permit Lyft and Lime to operate scooter and bike share services. As part of those agreements, Lyft and Lime agreed to install a combined 400+ parking stations, to fund and work with the City on a large-scale engagement plan to educate people on how to safely ride and park electric scooters, and to offer steeply discounted rates for residents in need-based areas.[4]

33. Upon information and belief, in Denver, Colorado, electric scooters were initially classified under state law as "toy vehicles" that had to be operated only on sidewalks and precluded their operation in the street or bicycle lanes.[5]

34. Upon information and belief, the initial public feedback to the initial scooter operations was strongly against sidewalk scooter operation due to the difference in speed that scooters could travel versus that of a pedestrian. In response, the Denver City Council adopted an ordinance in January 2019 that permitted scooter use in bicycle lanes and public roadways.[6]

35. Upon information and belief, upon this change in January 2019, electric scooters were likened to be closer to bicycles than toys and were thus required to be utilized only on roadways and not on sidewalks.[7]

36. Upon information and belief, the City and County of Denver created a process to enable the reporting of scooter use violations by calling 311 and submitting a Violation Form through its website.[8] Upon information and belief, the Denver City

---

[4] https://www.denvergov.org/Government/Agencies-Departments-Offices/Agencies-Departments-Offices-Directory/Department-of-Transportation-and-Infrastructure/Programs-Services/Transit/Micromobility-Program#:~:text=In%202021%2C%20Denver%20City%20Council,a%20combined%20400%2B%20parking%20stations.

[5] https://www.denvergov.org/files/assets/public/v/2/doti/documents/programsservices/dockless-mobility/dockless-mobility-pilot-final-report.pdf

[6] https://www.denvergov.org/files/assets/public/v/2/doti/documents/programsservices/dockless-mobility/dockless-mobility-pilot-final-report.pdf

[7] https://www.denvergov.org/Government/Agencies-Departments-Offices/Agencies-Departments-Offices-Directory/Department-of-Transportation-and-Infrastructure/Programs-Services/Transit/Micromobility-Program#:~:text=In%202021%2C%20Denver%20City%20Council,a%20combined%20400%2B%20parking%20stations.

[8] https://www.denvergov.org/Government/Agencies-Departments-Offices/Agencies-Departments-Offices-Directory/Department-of-Transportation-and-Infrastructure/Programs-Services/Transit/Micromobility-Program#:~:text=In%202021%2C%20Denver%20City%20Council,a%20combined%20400%2B%20parking%20stations.

9

Council received public feedback that pedestrians feel unsafe due to the presence of scooters on sidewalks, and conversely, scooter riders feel unsafe riding scooters in the streets.

37.    Upon information and belief, as of 2024, more than 20,000 scooter trips are taken daily by people living in Denver, Colorado.[9]

38.    Upon information and belief, on Monday, August 5, 2024, the Denver City Council convened and considered a variety of issues related to electric scooters, including but not limited to scooters improperly parked, improperly blocking the right of way, illegally riding on sidewalks, "double riders," taking the right of way from disabled individuals utilizing public sidewalks, scooter "litter" including in waterways, serious injuries sustained by persons while utilizing scooters, among other issues.

39.    Upon information and belief, as of 2024, electric scooter use results in more than 3.9 emergency room visits daily in Denver, Colorado, causing more than $65,997,883.00 in medical bills annually.

40.    Upon information and belief, as of 2024, orthopedic injury admissions at Denver Health increased by 540 percent in the two years after e-scooters were introduced in the city, compared to two years before, according to a 2022 study.[10]

41.    The current electric scooter ecosystem in Denver is inherently dangerous for a variety of reasons, especially for scooter riders who are required to operate the electric scooter in the public roadway, resulting in catastrophic and permanent injuries to individuals, including Plaintiff, as set forth more fully below.

## THE SCOOTER AND THE APP

42.    Plaintiff realleges and incorporates by reference all paragraphs above as though fully set forth below.

43.    The Scooter Petitioner was riding when he was injured was labeled as a "Lime" scooter. But it is believed to have been designed under the "JUMP" brand around the late 2010's or early 2020's.

---

[9] Denver City Council Budget and Policy Committee Agenda Presentation, Monday August 5, 2024, at 1:30 PM. City and County Building, Council Committee Room, Room 391, 1437 Bannock Street, copy of statistics and recording of presentation available at https://denver.granicus.com/player/clip/16255?view_id=180&redirect=true.
[10] https://journals.lww.com/jaaos/Documents/JAAOS_70_3_Infographic_29_Aug_2022%20.pdf

44.    Around the same time, Uber and Lime were engaged in some sort of investment/merger/acquisition/spin-off deal. As a part of this deal, JUMP is believed to have been transferred from Uber to Lime.

45.    Upon information and belief, employees of Uber, Jump, Lime, and OKAI participated in the design of the Scooter as relevant to this case.

46.    Upon information and belief, Defendants updated the Scooter design relative to prior e-scooter designs to improve wheel size and shock absorption.

47.    Upon information and belief, they did so because they knew that insufficient wheel size and shock absorption were unreasonably dangerous.

48.    However, upon information and belief, the Scooter's new design also came with increased weight and speed, thereby resulting in an insignificant, if any, increase in safety performance from its former defectively designed scooter models.

49.    Upon information and belief, OKAI then assembled the specific Scooter Mr. Valdez was riding in this case, white-labeled with Lime's logo, and shipped it to Colorado.

50.    Before being placed into service, the Scooter was, upon information and belief, supposed to be checked and maintained by Lime.

51.    As it reached Mr. Valdez, the Scooter and associated Lime App had the following problems (this list is illustrative, not exhaustive):

    a. The wheels were dangerously small;

    b. The suspension and shock-absorption system was dangerously minimal;

    c. The App did not include effective warnings related to nighttime riding and other issues;

    d. The weight limit warning was hidden from a reasonable user's view;

    e. The headlight was not powerful enough;

    f. The Scooter was capable of going too fast for its vehicle dynamics characteristics, especially at night;

11

g. The Scooter was required to be ridden on the street instead of the sidewalk; and

h. The tires were dangerously underinflated.

52. Feasible and inexpensive alternatives were available to the Defendants, by the time of Mr. Valdez's crash, to solve each of these problems, and they would likely have prevented Mr. Valdez from being injured.

## THE CRASH

53. Plaintiff realleges and incorporates by reference all paragraphs above as though fully set forth below.

54. On or about August 13, 2022, at approximately 1:00 am., Plaintiff was a member of the reasonably expected users of electric scooters.

55. On or about August 13, 2022, at approximately 1:00 a.m., Plaintiff activated the Scooter, which was stationed outside of the Owl Saloon, in Denver, Colorado.

56. On or about August 13, 2022, at approximately 1:00 a.m., Plaintiff activated the Scooter for the purpose of going home that evening.

57. Effective warnings about rider weight limits and the dangers of riding the Scooter (including under the specific circumstances of Mr. Valdez's ride) would probably have caused Mr. Valdez to choose the dangers of walking home over those of riding the Scooter.

58. On or about August 13, 2022, at approximately 1:00 a.m., during Plaintiff's ride home on the Scooter, Plaintiff turned left to ride south on Elm Street and accelerated to cruising speed.

59. On or about August 13, 2022, at approximately 1:00 a.m., the Scooter that Plaintiff was riding hit a small pothole.

60. A brighter light and slower top speed would likely have allowed Mr. Valdez to see and avoid the pothole, though a reasonable person would probably also have assumed a pothole of this size should not have been a hazard.

61. Alternatively, allowing Mr. Valdez to ride on the sidewalk would have prevented him from hitting the pothole.

12

62.     The Scooter's wheels were small enough to fall into the pothole and impact the far wall of the pothole instead of spanning the opening of the hole and rolling over it.

63.     A larger wheel, *e.g.*, a bicycle wheel, would likely have rolled over the pothole without incident.

64.     On or about August 13, 2022, at approximately 1:00 a.m., the Scooter, upon hitting the pothole, jarred Plaintiff's left hand off of the handlebars and sent the Scooter into a "steering wobble."

65.     A more robust suspension system and a properly inflated tire would probably have prevented Mr. Valdez from losing his grip on the handlebars and/or going into an unrecoverable steering wobble.

66.     On or about August 13, 2022, at approximately 1:00 a.m., Plaintiff was unable to recover the Scooter after it was sent into a "steering wobble" from hitting the pothole.

67.     On or about August 13, 2022, at approximately 1:00 a.m., the Scooter sent Plaintiff airborne into a parked car.

68.     Plaintiff suffered injuries, damages, and losses including, but not limited to:

   a. General, neurological, and musculoskeletal injuries, including but not limited to a spinal cord injury, resulting in paralysis and quadriplegia;

   b. Other and further damage, injury, and impairment to Plaintiff's neurological, muscular, and skeletal system;

   c. Permanent physical impairment and disfigurement;

   d. Past, present, and future medical, hospital, pharmaceutical, rehabilitation, and related expenses;

   e. Past, present, and future pain, suffering, and other non-economic damages;

   f. Past, present, and future mental and emotional distress;

g.  Past, present, and future loss of earnings and earning capacity;

h.  Past, present, and future impairment of the enjoyment and quality of a full and complete life; and

i.  Other and further damage or loss not specifically known at this time.

### FIRST CLAIM FOR RELIEF
### STRICT PRODUCT LIABILITY
### DESIGN, MANUFACTURING/MAINTENANCE, AND WARNINGS
### (against all Defendants)

69.    Plaintiff realleges and incorporates by reference all paragraphs above as though fully set forth below.

70.    Upon information and belief, each Defendant fails to provide adequate warnings and operational instructions to purchasers/users of its electric scooters.

71.    Upon information and belief, at all times pertinent hereto, Defendant Lime stations scooters outside of bars and areas where people are drinking alcohol.

72.    Upon information and belief, at all times pertinent hereto, people drinking alcohol are unlikely to understand that riding an electric scooter under the influence of alcohol is as dangerous or more dangerous than driving a car under the influence of alcohol.

73.    Upon information and belief, at all times pertinent hereto, each Defendant failed to sufficient warn its riders or potential riders from utilizing electric scooters while under the influence of alcohol.

74.    Upon information and belief, at all times pertinent hereto, each Defendant has not provided any safeguards or equipped its electric scooters to prevent users who have consumed alcohol from purchasing/leasing an electric scooter.

75.    Upon information and belief, at all times pertinent hereto, each Defendant failed to inform the ordinary users of its electric scooters, including Plaintiff, of any specific risks of harm associated with any intended or reasonably expected use.

76.    Upon information and belief, at all times pertinent hereto, each Defendant failed to inform the ordinary users of its electric scooters, including

Plaintiff, regarding the specific risks of harm arising from any failure to following product instructions.

77.     Upon information and belief, at all times pertinent hereto, the Scooter had/has a weight limit of 100kg, which is printed only on the bottom of the vehicle. The weight limit is not converted to pounds and is not placed anywhere a reasonable user would be able to notice this warning.

78.     Upon information and belief, at all times pertinent hereto, it is not reasonable to expect users and/or potential users of each Defendant's electric scooters to turn them upside down to check for any weight limit warning labels prior to use.

79.     Upon information and belief, at all times pertinent hereto, each Defendant does not conduct any vetting of whether its users and/or potential users of its electric scooters meet the weight limit requirements before selling/leasing its electric scooters.

80.     Upon information and belief, at all times pertinent hereto, each Defendant's warnings against riding its electric scooters while intoxicated are inadequate to prevent the specific risks of harm arising from permitting users to ride Lime's electric scooters after consuming alcohol.

81.     Upon information and belief, at all times pertinent hereto, if the Scooter was equipped with a feature to prevent users that exceed the Scooter's permissible weight limit, Plaintiff would not have been injured.

82.     Upon information and belief, at all times pertinent hereto, each Defendant failed to warn users like Plaintiff of multiple other risks of riding the Scooter, including the risks of riding at night, the risks associated with smaller wheels than those on bicycles, the risks of riding in streets instead of on sidewalks, and other risks described above.

83.     Upon information and belief, effective warnings would have prevented Mr. Valdez from riding on the night he was injured, or prevented him from hitting the pothole that caused his crash, again preventing his injuries.

84.     Upon information and belief, at all times pertinent hereto, each Defendant's failure to warn Plaintiff of the risks of harm associated with the use of the Scooter was a cause of Plaintiff's injuries, damages, and losses, as described above.

85. Upon information and belief, at all times pertinent hereto, each Defendant manufactured (within the broad meaning of that term under Colorado's Products Liability statute) electric scooters, including the subject Scooter

86. As set forth above, the Scooter was designed and manufactured with inadequate safety features.

87. Upon information and belief, at all times pertinent hereto, each Defendant designed and manufactured the Scooter, both before it was put into use and through its post-delivery inspection and maintenance work.

88. Upon information and belief, at all times pertinent hereto, each Defendant was engaged in the business of selling and/or leasing the Scooter for use.

89. Upon information and belief, on or about August 13, 2022, at approximately 1:00 a.m., Defendant Lime sold/leased the scooter to Plaintiff.

90. Upon information and belief, at all times pertinent hereto, the Scooter was defective and therefore unreasonably dangerous to Plaintiff as described above.

91. Upon information and belief, at all times pertinent hereto, there were feasible alternative design options available to each Defendant, *e.g.*, an electric bicycle, which is designed in a manner that it can reasonably handle normal road variances, such as potholes.

92. Upon information and belief, at all times pertinent hereto, if the Scooter had been designed differently as set forth above, Plaintiff would have been able to safely avoid or ride over the pothole without sustaining life-changing injuries.

93. Upon information and belief, at all times pertinent hereto, each of the defects associated with the Scooter was a cause of Plaintiff's injuries, damages, and losses, as set described above.

94. Upon information and belief, Defendant Lime does not properly maintain its electric scooters, including the subject Scooter, but deploys its scooters into the public and takes few, if any, measures to inspect and maintain the scooters between rides.

95. Upon information and belief, Defendant Lime employs "Logistics Providers" to pick up the electric scooters and charge them, eventually putting the scooter back into public rotation when charged.

16

96.     Upon information and belief, Defendant Lime's "Logistics Providers" are not paid by Lime until they charge the scooter and deploy it back into rotation, at a "LimeHub."

97.     Upon information and belief, the Lime "Logistics Providers" are not paid if they inform Defendant Lime that the scooter is defective and do not place the scooter back into rotation.

98.     Upon information and belief, the Lime "Logistics Providers" are not employed to maintain the scooters.

99.     Upon information and belief, Defendant Lime incentivizes "Logistics Providers" to place Scooters outside places like bars, where Lime knows they will get more frequent rides.

100.    Upon information and belief, at all times pertinent hereto, the subject Scooter was not maintained in a manner that conformed with the manufacturer's specifications.

101.    Upon information and belief, at all times pertinent hereto, the Scooter's front tire pressure specifications require a tire pressure of 41 PSI.

102.    Upon information and belief, on August 13, 2022, at approximately 1:00 a.m., the Scooter that Plaintiff purchased/leased had a PSI of 12.5.

103.    Upon information and belief, on August 13, 2022, at approximately 1:00am, the Scooter that Plaintiff purchased/leased was not properly maintained, including but not limited to incorrect tire pressure, loose or worn out bearings, bushings, bolts and/or nuts, misaligned wheels, and other maintenance issues not yet known at this time.

104.    Upon information and belief, the failure to ensure proper maintenance, including but not limited to incorrect tire pressure, loose or worn out bearings, bushings, bolts and/or nuts, and misaligned wheels are the most common causes of uncontrollable "steering wobble."

105.    Upon information and belief, the Scooter Plaintiff purchased/leased on August 13, 2022, at approximately 1:00 a.m. was not kept in proper maintenance.

106.    Upon information and belief, the failure to keep the Scooter in proper maintenance caused Plaintiff to crash on August 13, 2022, at approximately 1:00 a.m.

107.    Upon information and belief, at all times pertinent hereto, if the Scooter had been properly manufactured/maintained to the design specifications for tire pressure, bearing, bushing, bolt and nut tightness, the steering wobble would not have occurred and Plaintiff would not have been injured.

108.    The defect(s) in the manufacturing and/or maintenance of the Scooter was a cause of Plaintiff's injuries, damages, and losses.

109.    As a direct and foreseeable result of the defect(s) in the manufacturing and/or maintenance of the Scooter, Plaintiff suffered injuries, damages, and losses, as described above.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## FOURTH CLAIM FOR RELIEF
### NEGLIGENCE
### (against all Defendants)

110.    Plaintiff realleges and incorporates by reference all paragraphs above as though fully set forth below.

111.    Defendants owed Plaintiff a duty of reasonable care.

112.    Defendants breached their duty of reasonable care to Plaintiff.

113.    Upon information and belief, at all times pertinent hereto, as a result of Defendants' design and manufacturing decisions, but unbeknownst to Plaintiff, the Scooter was not reasonably equipped to handle being driven on public streets and roadways in the Denver metro area.

114.    Defendants were negligent.

115.    As a direct and foreseeable result of Defendants' negligence, Plaintiff suffered injuries, damages, and losses, as described above.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## FIFTH CLAIM FOR RELIEF
## STRICT PRODUCT LIABILITY FOR MISREPRESENTATION OF FACT
### (against all Defendants)

116.    Plaintiff realleges and incorporates by reference all paragraphs above as though fully set forth below.

117.    Upon information and belief, at all times pertinent hereto, the Scooter should have been designed and manufactured in manner that would ensure it could reasonably handle being driven on public streets and roadways in the Denver metro area.

118.    Upon information and belief, at all times pertinent hereto, the Scooter was not designed and manufactured to uphold this standard.

119.    Upon information and belief, at all times pertinent hereto, each Defendant made design decisions that resulted in a tire size that cannot reasonably handle being driven on public streets and roadways in the Denver metro area.

120.    Upon information and belief, at all times pertinent hereto, the manufacturing decisions included, without limitation, outsourcing manufacturing to locations known to prioritize efficiency over quality control.

121.    Upon information and belief, on August 13, 2022, at approximately 1:00 a.m., Defendant Lime sold/leased the Scooter to Plaintiff.

122.    Upon information and belief, at all times pertinent hereto, each Defendant was engaged in the business of selling/leasing the Scooter and those like it for public use.

123.    Upon information and belief, at all times pertinent hereto, each Defendant misrepresented a fact concerning the character or quality of the Scooter that would be material to potential purchasers/users of the Scooter.

124.    Specifically, among other things, each Defendant misrepresented that the Scooter was designed in a manner that it can reasonably handle normal road variances, such as potholes.

125.    Each Defendant's misrepresentation was made to potential purchasers/users as members of the public at large.

19

126. As a purchaser or user, Mr. Valdez reasonably relied on Defendant Lime's misrepresentations.

127. Mr. Valdez was a person who would be reasonably expected to purchase/lease the Scooter.

128. Mr. Valdez has and will continue to suffer injuries, damages, and losses, as described above, due to his reasonable reliance on Defendant Lime's misrepresentations.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## PRAYER FOR RELIEF

## PLAINTIFF DEMANDS A TRIAL TO A JURY OF SIX (6) PEOPLE.

WHEREFORE, Plaintiff requests that judgment be entered in his favor and against Defendants, in an amount to be determined at trial, for all available relief, including without limitation, economic damages, non-economic damages, and damages for physical impairment and disfigurement, as well as interest, costs, attorney's fees, and all other items permitted by statute or rule, and for any other and further relief as this Court deems just and proper under the circumstances.

RESPECTFULLY SUBMITTED this 8th day of August, 2024.

DORMER HARPRING, LLC

*This pleading is filed electrically pursuant to C.R.C.P., 121 § 1-26. The original signed pleading is in counsel's file.*

By:    */s/ Sean M. Dormer*
        Sean M. Dormer, #44962
        Amy N. Rogers, #49266
        *Attorneys for Plaintiff*

Plaintiff's address:
1818 Marion Street, Apt. 708
Denver, Colorado 80218

<table>
<tr><td>

DISTRICT COURT, CITY & COUNTY OF DENVER,
STATE OF COLORADO
1437 Bannock Street
Denver, Colorado 80202
(303) 606-2300

</td><td></td></tr>
</table>

| | |
|---|---|
| DISTRICT COURT, CITY & COUNTY OF DENVER, STATE OF COLORADO<br>1437 Bannock Street<br>Denver, Colorado 80202<br>(303) 606-2300 | DATE FILED<br>August 9, 2024 4:28 PM<br>CASE NUMBER: 2024CV32427 |
| Plaintiff(s): TIMOTHY VALDEZ<br><br>v.<br><br>Defendant(s): UBER TECHNOLOGIES INC et al | ▲ COURT USE ONLY ▲ |
| | Case Number: 2024CV32427<br><br>Courtroom: 414 |
| **DELAY REDUCTION ORDER** | |

All civil courtrooms are on a delay reduction docket.

**IF AN ATTORNEY OR PRO SE PARTY FAILS TO COMPLY WITH THIS ORDER, THE COURT MAY DISMISS THE CASE WITHOUT PREJUDICE. THIS ORDER IS THE INITIAL NOTICE REQUIRED BY C.R.C.P 121 § 1-10, AND C.R.C.P. 41(b)(2).**

A.     In all civil actions, the following deadlines must be met:

1.     **Service of Process:** Proof of service of process under C.R.C.P. 4 for all defendants must be filed within **63 days** after the date of filing of the complaint. After **63 days**, the action may be dismissed by the Court against any defendant for whom proof of service has not been filed.

2.     **Default:** Application for entry of default under C.R.C.P. 55(a) must be filed within **14 days** after default has occurred.

If all defendants are in default, a motion for entry of default judgment under C.R.C.P. 55(b) must be filed with the application for entry of default. Motions for entry of default judgment must comply with C.R.C.P. 121 § 1-14. Motions must also include a Certificate of Mailing to all parties against whom default judgment is sought. Reasonable inquiry regarding a person's military status requires confirmation through the Department of Defense's Servicemembers Civil Relief Act website (https://scra.dmdc.osd.mil) or equivalent confirmation.

3.     **Trial Setting:** The Responsible Attorney as defined in C.R.C.P. 16(b)(2) must file and serve a Notice to Set the case for trial and must complete the setting of the trial no later than **14 days** from the date the case is at issue. (Note: this is a shorter timeframe than would otherwise be required by C.R.C.P. 16.1(g).) A case is "at issue" when: (a) all parties have been served and have filed all pleadings permitted by C.R.C.P. 7; or (b) defaults or dismissal have been entered against all non-appearing parties; or (c) at such other time as the Court directs.

1

4.    Cases filed under **C.R.C.P. 16:**

a)    **Case Management Conference:**  The notice to set trial must also include a notice to set a Case Management Conference as required by C.R.C.P. 16(d)(1), to be held no later than **49 days** after the case is at issue.

b)    **Proposed Case Management Order:**  At least **7 days** before the Case Management Conference, the parties must file, in editable format, a proposed Case Management Order consisting of the matters set forth in C.R.C.P. 16(b)(1)-(17) and take all necessary actions to comply with those subsections.

c)    **Waiver of Case Management Conference:**  If all parties are represented by counsel, a joint request to waive the case management conference may be included in the proposed Case Management Order, but unless such a request has been granted, counsel and any unrepresented parties should plan on appearing for the case management conference.

5.    **Cases filed under C.R.C.P. 16.1:**

A)    **Certificate of Compliance:**  Not later than **49 days** after the case is at issue, the Plaintiff (or the Responsible Attorney) must file a Certificate of Compliance as required under C.R.C.P. 16.1(h).  No Case Management Order or Case Management Conference is required.

B)    Additionally, in all civil actions, the following provisions apply:

**Service of this Order:**  The Plaintiff or Responsible Attorney must send a copy of this order to all other parties who enter an appearance.

**Related Cases:**  An attorney entering an appearance in this case who is aware of a related case is ordered to complete and file in this case an Information Regarding Related Case(s) form available in Room 256 of the City and County Building or at:

C)    If any party or witness will require an interpreter, please notify the Courtroom Clerk as soon as possible and in no event later than 91 days before the trial date.

https://www.courts.state.co.us/userfiles/file/Information_Regarding_Related_Cases_Form(1).doc

IT IS SO ORDERED.

DATED:    August 9, 2024    BY THE COURT:

_____
ANDREW J. LUXEN
District Court Judge

2

| DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO<br>1437 Bannock Street<br>Denver, CO 80202<br>(303) 606-2300 | DATE FILED<br>August 9, 2024 4:28 PM<br>CASE NUMBER: 2024CV32427 |
|---|---|
| Plaintiff(s): TIMOTHY VALDEZ<br><br>v.<br><br>Defendant(s): UBER TECHNOLOGIES INC et al | ▲ COURT USE ONLY ▲<br><br>Case No.: 2024CV32427<br><br>Div.: 414 |
| PRE-TRIAL ORDER AND DISCOVERY PROTOCOL | |

## THIS PRE-TRIAL ORDER AND DISCOVERY PROTOCOL APPLIES TO ALL CASES ASSIGNED TO THIS COURTROOM.

Plaintiff's counsel or a Plaintiff proceeding *pro se* shall serve copies of this Pre-trial Order and Discovery Protocol upon Defendant(s) and all future counsel/parties in this case. A certification of compliance with this requirement of the Order shall be filed within 7 days of providing notice.

## PRE-TRIAL ORDER

### I.    *PRO SE* PARTIES

1.    Parties appearing without counsel are directed to contact Colorado Legal Services / Metro Volunteer Lawyers, 1905 Sherman Street, Suite 400, Denver, Colorado, 80203, (303) 837-1313 to determine whether they qualify for free or reduced-cost legal representation.

2.    On *pro se* cases, the Court orders the Responsible Attorney, as defined in C.R.C.P. 16(b)(2), to notice the case for a Case Management Conference. *See also* C.R.C.P. 16.1(j).

3.    This Division requires Case Management Conferences in all cases in which one or more parties are proceeding *pro se,* whether the case is governed by C.R.C.P. 16 or C.R.C.P. 16.1.

Revised 7/25/24                                                    1

## II.    CASE MANAGEMENT ORDER

1.    All parties shall participate, in good faith, in preparing the Proposed Case Management Order pursuant to C.R.C.P. 16(b). To the extent that any party does not so participate, those circumstances shall be explained in the Proposed Case Management Order.

## III.    CASE MANAGEMENT CONFERENCE

1.    Pursuant to the Delay Reduction Order, the Responsible Attorney's notice to set the case for trial shall also include a notice to set a case management conference, to be held no later than forth-nine (49) days after the case is at issue. The clerk is available to set trials and case management conferences on Tuesdays, Wednesdays, and Thursdays between 10:00 a.m. and 12:00 noon. The Responsible Attorney shall call the Court on the day and time designated in the notice to set, receive potential dates from the Court for both trial and the case management conference, confer with all parties regarding the dates, and promptly notify the Court of which dates the parties have selected.

2.    Unless otherwise ordered, lead counsel and unrepresented parties, if any, shall attend the case management conference. If all parties are represented by counsel, counsel may timely submit a proposed order and jointly request the Court to dispense with a case management conference pursuant to C.R.C.P. 16(d)(3). However, unless and until such a request has been granted, counsel and any unrepresented parties should plan on appearing for the case management conference.

3.    At the conference, parties and counsel shall be prepared to discuss the proposed order, issues requiring resolution, and any special circumstances of the case.

## IV.    TRIAL SETTINGS

1.    **Trials will be held within one (1) year.** Cases will be set to commence trial within one (1) year from the filing of the complaint or other initiating pleading. There are rarely, if ever, reasons for a trial to commence later than one (1) year from filing. Before permission is granted, there will be an in person conference between counsel and Court as to why a later trial date is necessary.

2.    **Trials will be scheduled for five (5) days or less.** Most matters filed in Denver District Court should be tried in five (5) days or less, including jury deliberation time. In Division 414, the trial day begins at 8:30 a.m. (with the exception of the first day, which will begin at 8:00 a.m.) and proceeds to 5:00 p.m. The Court takes a fifteen (15) minute break in the morning and afternoon and one (1) hour for lunch. Requests for

Revised 7/25/24                                         2

more than five (5) days must be made to the Division clerk, who will set the matter for in person hearing for the purposes of setting trial.

3. <u>Trial time to include jury deliberation time.</u>   The parties are to include jury deliberation time in their request for total number of trial days.

4. <u>Motions to Continue are routinely denied</u>.  Motions to continue trial dates, even if stipulated, are routinely denied, unless good cause is shown.  Unless and until any such motion is granted, counsel shall continue to prepare for trial.  Parties seeking continuance of trial dates should anticipate all trial counsel appearing in person for the purposes of requesting that continuance.  Division 414 rarely has the luxury of resetting matters for trial once set.

5. <u>Interpreter services</u>.  The parties must advise the courtroom judicial assistant at the time of setting jury or court trial of the need for foreign language interpreter services.  Interpreter services for the civil division are limited and are infrequently available at the last minute.  In any event, the parties shall advise the Court no later than **sixteen (16) weeks** before trial of the need for foreign language interpreter services, the specific language or dialect and when the services will be needed during trial. Failure to notify the Court in a timely fashion may result in trial being continued.

## V.    **DUTY TO CONFER**

1. The Court takes the meet-and-confer requirements of C.R.C.P. 121 Sec. 1-15, 8 seriously.  In the event of a dispute, counsel should confer via *live conversation*, either by telephone or in person.  Voicemails, emails and letters do not count as live conversation.  Please give counsel adequate time to respond and opposing counsel should be timely in responding.

## VI.    **DISCOVERY AND DISCOVERY MOTIONS**

1. Discovery shall be conducted in accordance with the attached Discovery Protocol.

2. If there is a discovery dispute, counsel is expected to confer in a meaningful way to try to resolve it, in whole or in part. (*see* § V, above).

3. If the parties need resolution of a discovery issue, including one that arises during a deposition, they are encouraged to call the Court at (303) 606-2429, and every effort will be made to hear the matter orally and immediately via telephone or Webex, or on as expedited a basis as possible.

4. No written discovery dispute motions are permitted.

Revised 7/25/24                                                     3

## VII.    <u>EXPERTS</u>

1.      Disclosure of expert opinions must comply with C.R.C.P. 26(a)(2). As set out in Comment 21 to C.R.C.P. 26, detailed expert disclosures "facilitate the trial, avoid delays, and enhance the prospect for settlement."

2.      Retained Experts shall be limited to testifying on direct examination about matters disclosed in reasonable detail in the written expert disclosures.

3.      For non-retained experts (including treatment providers), the Court strictly construes the requirement in C.R.C.P. 26(a)(2)(b)(ii)(a). Non-retained expert disclosures must include "a complete description of all opinions to be expressed and the basis and reasons therefor." This is required regardless of whether the expert's opinions formed during treatment are stated in a party's medical records. A boilerplate statement that the treatment provider "will testify about the plaintiff's medical records and their impact on the plaintiff's treatment" does not meet this requirement.

4.      Disputes over the adequacy of expert disclosures should be raised at the time of disclosure.

## VIII.    <u>OTHER MOTIONS</u>

1.      <u>Written Motions:</u> It is the expectation that all motions, briefs, and other written submissions filed with the court are the original work of the attorney or attorneys who sign the pleading.   If Chat GPT or other AI is used to generate any written product filed with this Court, a notice shall appear on the first page of the filing indicating that AI was used to generate all or part of the filing, as well as the specific portions of the filing (e.g., page number and paragraphs or lines) which contain the AI-generated content.

2.      <u>Extensions of Discovery Deadlines</u>: Stipulated agreements to extend the dates for filing discovery responses, objections, and disclosures of no more than seven (7) days do not need to be filed with the Court. Extensions for more than seven (7) days, even if stipulated, will be granted only upon a showing of extraordinary circumstances.

3.      <u>Summary Judgment and Motions for Determination of Law</u>: All motions for summary judgment and motions for determination of law under C.R.C.P. 56(h) must be filed no later than ninety-one (91) days (thirteen (13) weeks) before trial and there shall be no separate deadline for the filing of cross-motions as reflected in C.R.C.P. 56. The Court will generally not grant extensions of time to file summary judgment motions and motions for determination of law. This is because the late filing of these motions or repeated granting of extensions of time to file such motions or opposing briefs, does not permit the Court sufficient time to rule

in advance of trial. Failure to comply with the motions deadlines stated in this order may result in a delayed ruling or no ruling from the Court before trial.

4.   Expert Challenges: Motions challenging expert testimony pursuant to C.R.E. 702 must be filed no later than seventy (70) days before trial, with responses filed no later than forty-nine (49) days before trial. The Court will decide whether a hearing will be necessary.

5.   Other Pretrial Motions: All other pretrial motions must be filed not later than thirty-five (35) days before trial, unless otherwise ordered by the Court, with responsive briefs due no later than twenty-eight (28) days before trial. If an expedited ruling is desired, the moving party must specifically request an expedited schedule in the original motion and the moving party must contact the Clerk of Division 414 to advise of this request. The Court may *sua sponte* expedite the briefing schedule pursuant to C.R.C.P. 121 § 1-15.

6.   The Court may rule on motions without hearing, pursuant to C.R.C.P. 121, or the Court may order a hearing prior to trial.

7.   Motions are to be accompanied by a recitation of legal authority. There will then be a response, and a reply (except as to a motion *in limine*), unless this Court modifies the briefing pursuant to C.R.C.P. 121. No other briefs relating to a given motion will be accepted for filing unless permitted by Court Order. Please do not combine motions or incorporate your own motions into a response or reply as this makes it difficult for the Court to properly determine when the motion may be ripe.

8.   The requirements of C.R.C.P. 121 § 1-15 concerning the time for filing motions and the content and length of briefs will be strictly enforced. The Court may expedite the briefing schedule pursuant to C.R.C.P. 121 § 1-15.

IX.   **TRIAL MANAGEMENT ORDER AND CONFERENCES**

1.   The Trial Management Order ("TMO") must comply strictly with the requirements of C.R.C.P. 16 or C.R.C.P. 16.1, as amended, and must be filed at least twenty-eight (28) days before trial. All parties must participate in the preparation of the TMO.

2.   Should the parties be unable to agree on the proposed TMO or if counsel believes it would be helpful, a Trial Management or Pretrial Conference may be scheduled upon notice, to be attached to the proposed TMO submitted. The Court will contact counsel approximately thirty (30) days before trial to inquire whether the parties desire a Trial Management or Pretrial Conference, and if so, to schedule one. The court will expect lead counsel to attend any Trial Management or Pretrial Conference, and to be prepared to discuss, in addition to any issues with the TMO

Revised 7/25/24                                      5

itself, any issues or concerns arising under §§ VI – XV of this Order.

3.    Counsel should be aware that when the Court has multiple trials ready to be tried on a particular date, the presence and timeliness of a TMO is one criterion used to determine priority.

## X.    BEFORE TRIAL

1.    Exhibits: All exhibits must be pre-marked. The parties are strongly encouraged to cooperate in submitting a single set of exhibits, enumerated with numbers. **If the parties are unable to submit a single set of exhibits, Plaintiffs shall use numbers and defendants shall use letters to designate their exhibits**. The parties shall not mix numbers and letters, even for related exhibits (e.g. 1(a), 1(b), 1(c), etc.). The civil action number of the case should be placed on each of the exhibit labels.

The parties shall exchange copies of their pre-marked exhibits, including demonstrative exhibits, no later than twenty-one (21) days before trial. Authenticity of all identified and exchanged exhibits shall be deemed admitted unless objected to in writing no later than fourteen (14) days after receipt of the exhibits.

The Court expects counsel to stipulate to the admission of every exhibit as to which there is not a good faith objection. Only where counsel has not had a reasonable opportunity to view an exhibit in advance will trial be interrupted for such a review.

Counsel must also provide at least three (3) complete sets of exhibits, whether stipulated or not: One for the Court, one for each opposing side's counsel, and one for the witness stand (which will be the official copy that goes to the jury).

Please note the specific procedures regarding the handling of exhibits post-trial or post-hearing, at § XIV, *infra*.

2.    Exhibit Lists: Counsel shall confer and prepare an index of exhibits that counsel expects of offer, in a grid or spreadsheet format, that identifies with specificity the exhibit by number or letter and description. The exhibit list shall specify whether or not the exhibit is received by stipulation. **The exhibit lists shall be electronically filed and emailed to the Court's division staff at 02courtroom414@judicial.state.co.us no later than seven (7) days prior to the scheduled trial.**

3.    Witness lists: Each counsel shall prepare a list of witnesses that will and may be called that the Court can read to the jury at the beginning of the trial. The list shall be in addition to any prior designation of witnesses. In addition to listing the names of the witnesses, the list may also specify the witnesses' title or degree and employment (e.g. Sarah Murray, M.D., Children's Hospital Colorado) but no other identifying information should be included (e.g. address,

phone number etc.).  Additionally, counsel shall confer and prepare a joint order of proof which identifies each counsel's good faith estimate of the <u>order</u> in which witnesses will be presented and shall specify separately the <u>time</u> required for direct and cross-examination of each witness.  The time estimates must include re-direct examination. In no event may the cumulative time for witness examination exceed the time allocated for presentation of the trial; the total time allocation shall also account for the time necessary for jury selection, opening statements, regularly scheduled breaks, the jury instruction conference, and closing arguments.  The Court reserves the right to enforce the time estimates stated in the order of proof.  **The witness lists and order of proof shall be electronically filed and emailed to the Court's division staff at <u>02courtroom414@judicial.state.co.us</u> no later than seven (7) days prior to the scheduled trial.**

4.    <u>Orders of Proof</u>: Counsel shall confer and prepare a joint order of proof which identifies each counsel's good faith estimate of the order in which witnesses will be presented and shall specify separately the time required for direct and cross-examination of each witness. Such Order of Proof shall be filed with the Court no later than the morning of trial. The time estimates must include re-direct and re-cross. In no event may the cumulative time for witness examination exceed the time allocated for presentation of the trial; the total time allocation shall also account for the time necessary for jury selection, opening statements, regularly scheduled breaks, the jury instruction conference, and closing arguments.  The Court reserves the right to enforce the time estimates stated in the Order of Proof.

5.    <u>Depositions</u>: The showing of videotaped depositions or the reading of depositions in lieu of live testimony is strongly discouraged. However, if you are going to use depositions in lieu of live testimony, opposing counsel must be notified by proper identification of designated portions no later than twenty-eight (28) days prior to trial. Any other party may then provide the parties with its designations no later than fourteen (14) days before the trial date, with all reply designations by the proponent then made no later than seven (7) days before the trial date. Objections to all or part of the deposition testimony offered must be made not later than three (3) days prior to trial and must cite page, line, and the specific evidentiary grounds supporting the objection. In all other respects, C.R.C.P. 16(f)(3)(VI)(D) shall be complied with, including providing a copy of the deposition, with the proposed testimony highlighted, to the Court at least three (3) days prior to trial.  The same rules apply to both videotaped and transcribed depositions. When applicable, counsel is required to provide someone to read testimony.

While C.R.C.P. 32(a)(2) and (3) permit the use of certain depositions for purposes other than impeachment of a deponent under certain circumstances, any extended use at trial requires that the witness be listed in the Joint Order of Proof.

Revised 7/25/24                                   7

Original depositions will remain sealed until counsel request at trial that they be unsealed. Before trial begins, you must give the Court copies of all depositions likely to be used at the trial, as either direct evidence or impeachment.

6. Motions *in Limine*: A motion *in limine* must be filed no later than thirty-five (35) days before trial unless a different time is permitted by Court order, and any responses must be filed seven (7) days later (at least twenty-eight (28) days before trial) (*see* § VIII above).

## XI.   **TRIAL BRIEFS**

1. Trial briefs may be filed, although they are discouraged for jury trials unless they address evidentiary issues for the Court to be prepared to address. They should be concise and should not repeat previously filed pleadings or motions. Trial briefs must be filed no later than seven (7) days before the trial date.

## XII.   **JURY INSTRUCTIONS**

1. **Stipulated Jury Instructions and Verdict Forms:** Counsel shall meet and confer in a good faith effort to stipulate to jury instructions and verdict forms. Counsel for the first party to demand a jury (and whose demand has not been withdrawn) shall file such stipulated jury instructions and verdict forms no later than seven (7) days before trial. There is no need to cite legal authority on any stipulated jury instructions or verdict form.

2. **Disputed Jury Instructions and Verdict Forms:** Counsel for any party who requests a jury instruction or verdict form as to which there is no agreement shall, no later than seven (7) days before trial, file such disputed instructions and forms, together with a recitation of legal authority upon which each is based.

3. **All stipulated or disputed jury instruction should also be emailed to the Division at 02courtroom414@judicial.state.co.us no later than seven (7) days prior to the scheduled trial.**

4. It is not necessary to submit the basic introductory instructions, other than a simple statement of the case in the form of a stipulated CJI (4th) Instruction 2:1. If the parties cannot agree, one 2:1 instruction shall be submitted with highlights on the language upon which the parties cannot agree. The Court will handle other introductory remarks to the jury itself.

## XII.   **JUROR MATERIALS**

1. Juror Notebooks: Each trial juror will be provided with a juror notebook, by the Court. The court provides small (1½ inch) binders. They contain introductory

Revised 7/25/24

information about juror service, the courthouse, and its environs, stock instructions such as burden of proof, direct and circumstantial evidence, credibility of witnesses, etc.

2. <u>Juror Exhibit Binders:</u> At the pretrial conference, the Court will address whether exhibits will be provided to the jurors. If the Court permits the parties to provide binders of exhibits that have been admitted into evidence, the parties are required to adhere to the following requirements: (i) the parties must provide enough binders and copies of the exhibits for the jury and any alternates; (ii) the exhibits must be 3-hole punched with appropriate dividers with the exhibit number on them; and (iv) exhibits over fifty (50) pages must be excluded. These binders may not exceed 2 ½ inches.

3. <u>Master Exhibit Binder:</u> After the presentation of evidence, the parties shall confer and prepare one (1) "master" exhibit binder that includes one copy of every admitted exhibit from trial. **The master binder must be prepared prior to closing arguments.** This binder will be given to the jury before they begin deliberations. Plaintiff exhibits will go first; Defendant exhibits will go second. The Court reserves the right to determine in which order the exhibits will be organized within the exhibit binder. The parties will advise the Court if more than one (1) exhibit binder is necessary.

## XIII. <u>JURY SELECTION</u>

1. The Court will ask general *voir dire* questions before counsel's *voir dire*. The court's *voir dire* will cover basic background information and qualifications of jurors.

2. Each side will be limited to thirty (30) minutes for *voir dire*, unless additional time is requested and permitted in advance of the first day of trial. In multi-party cases, time must be divided between all parties on one side of the case.

3. Attorney *voir dire* must be conducted from the podium.

4. The Court will preclude the asking of argumentative questions during *voir dire*.

5. There may be one (1) or two (2) alternate jurors seated.

6. Challenges for cause will be exercised at the bench upon the conclusion of all parties' *voir dire*.

7. The alternate(s) will be the jurors with the highest juror number(s) (not seat numbers).

Revised 7/25/24

## XIV.  **CONDUCT OF TRIAL**

1.  Scheduling/Use of Time:

   a.  The trial day will start at 8:30 a.m. and end at 5:00 p.m.  There will be a morning and an afternoon break of fifteen (15) minutes each.  Lunch will run from approximately noon to 1:00 p.m.

   b.  Counsel and parties will be in court by 8:00 a.m. on the first day of trial so that counsel may discuss anything with the Court that needs to be dealt with before the trial begins.

   c.  Counsel are responsible for having witnesses scheduled so as to prevent any delay in the presentation of testimony or running out of witnesses before 5:00 p.m. on any trial day.  There shall be no more than a five (5) minute delay between witnesses.  If there is, the court may deem the delaying party to have rested and require any non-delaying party to commence its case in chief.

2.  Courtesy/Civility: Counsel and parties will refer to each other and witnesses by appropriate courtesy titles plus last names.  Use of first names without last names is inappropriate, unless referring to children.

3.  Opening Statements:  Each side will be limited to 20 minutes for opening statement unless additional time is requested and granted.  In multiple-party cases, this time must be divided between the parties on one side of the case.

4.  Questioning Witnesses:  The Court does not permit questioning beyond re-cross.  All questioning must be done from the podium unless permission is granted to approach the witness or the bench.  Counsel is advised that the FTR recording system in Courtroom 414 works best when all counsel and witnesses speak directly into the provided microphones.  This insures the most complete and accurate record of the proceedings, for appellate purposes and otherwise.

5.  Juror Questions:  Juror questions will be permitted when all other questions have been asked of a particular witness.  The court will discuss all juror questions at sidebar with counsel prior to asking them of the witness.  Counsel may ask brief follow-up questions after juror questions have been asked, but only as to issues raised by the jurors' questions.

6.  Objections:

   a.  Please make objections professionally:  be brief, concise and specific.  No speaking objections are permitted.

Revised 7/25/24

b.      Do not automatically respond to an objection; if the Court wants a response to an objection before ruling on it, the Court will ask for one.

7.      Jury Instruction Conference: The Court and counsel will work on jury instructions at least one (1) evening during trial, as early as possible. Once the final jury instructions are assembled, the Court will allow counsel to make a record of their objections to the instructions, and to tender any additional proposed instructions.

8.      Closing Arguments: Generally, there are no time limits on closing arguments. The Court reserves the right to impose time limits on closing arguments. The Plaintiff and Defendant will each have equal time.

9.      Uploading Exhibits to CCE Post-Hearing and Post-Trial: With the advent of electronic filing and electronic submission of the appellate record, the court no longer maintains custody of hard copies of exhibits at the conclusion of a trial or hearing. However, there must be a record of all exhibits offered and/or received in evidence. Accordingly, the following mandatory procedures will be followed:

a.      When the trial or hearing is concluded, each party will withdraw any paper or physical exhibits or depositions which that party marked, whether or not admitted into evidence, from the courtroom.

b.      Each party will maintain in its custody the withdrawn exhibits and/or depositions, without modification of any kind, until 63 days after the time for the need of such exhibits for appellate or other review purposes has expired, unless all parties stipulate otherwise on the record or in writing. It will be the responsibility of the withdrawing parties to determine when the appropriate time period has expired.

c.      Electronic versions of all exhibits admitted into evidence and all exhibits offered but not admitted into evidence shall be uploaded into CCE by the party which offered the exhibit within 48 hours of the conclusion of the trial or hearing. Unless each exhibit uploaded has a clearly legible exhibit sticker which conforms with § IX.1, *supra,* the uploading party shall file a caption sheet indicating the exhibit number or letter(s) which also bears the civil action number of the case. Exhibits which were admitted into evidence shall be uploaded in exactly the form they were in at the conclusion of the evidence, including any markings, notations, etc., added to the exhibit by any witness during testimony.

d.      It is the exclusive responsibility of counsel to diligently follow these procedures, in order to assure that an accurate trial and appellate record is preserved.

Revised 7/25/24

11

10.    Use of Freelance Court Reporters:  Use of freelance reporters in civil cases shall be governed by Chief Judge Directive 2011-1, Administrative Order Regarding Civil and Family Law Cases.  If a court reporter is used, they will be used for the entire trial.  Unless good cause is shown, the Court asks the parties to waive the reporting of the reading of jury instructions.  The court reporter will not be required to wait during deliberations, jury questions or the final reading of the verdict; for those matters, the electronic recording device will be used.

## XV.    SETTLEMENT

1.    The Court will require Alternative Dispute Resolution (ADR) in all cases.  Unless otherwise specified in the CMO, all ADR must occur ninety-one (91) days before trial and the Plaintiff must file a certificate of ADR compliance.

2.    The parties shall notify the Court within twenty-four (24) hours of settlement or resolution of their case.

3.    All documents confirming settlement of the case, including a notice of stipulation for dismissal with prejudice, shall be filed immediately.  If the parties file a notice of stipulation for dismissal with prejudice within fourteen (14) days of the date of commencement of trial, they should plan to be prepared to proceed to trial until a motion to dismiss has been filed.

The Court is familiar with the difficulties and anxieties of trial practice. We are here to assure that the parties have a full and fair opportunity to present their case, with a minimum of unnecessary stress.  Should any questions arise, please contact the Court Judicial Assistant for Courtroom 414 at (303) 606-2429.

IT IS SO ORDERED.

DATED:    August 9, 2024                BY THE COURT:

_____
Andrew J. Luxen
DISTRICT COURT JUDGE

## DISCOVERY PROTOCOL

Counsel is reminded that all discovery responses shall be made in the spirit and with the understanding that the purpose of discovery is to elicit facts and to get to the truth. The

Revised 7/25/24

12

Colorado Rules of Civil Procedure are directed toward securing a just, speedy and inexpensive determination of every action. The discovery process shall not be employed to hinder or obstruct these goals nor to harass, unduly delay or needlessly increase the cost of litigation.

Please refer to §VI of the Pre-Trial Order for procedures to be followed in the case of a discovery dispute.

## WRITTEN DISCOVERY

These discovery protocols shall be considered as part of the responsibility of parties and counsel to comply with the Rules of Civil Procedure relating to discovery.

1. The parties should refrain from interposing repeated boilerplate type objections such as "overbroad, unduly burdensome, vague, ambiguous, not reasonably calculated to lead to the discovery of admissible evidence" and other similar objections. In the event any such objections are made, they shall be followed by a clear and precise explanation of the legal and factual justification for raising such an objection. Additionally, if the objecting party otherwise responds to the discovery request but does so subject to or without waiving such an objection, that party shall describe with reasonable specificity the information which may be available, but which is not being provided as a result of the objection raised.

2. When a responding party claims not to understand either a discovery request or the meaning of any words or terms used in a discovery request, that party shall, within fourteen (14) days of receiving the discovery request, seek clarification of the meaning from counsel who served the discovery. A failure to seek such clarification shall be considered a violation of this Order for Discovery Protocol.

3. A discovery response which does not provide the information or material requested but promises to do so at some point in the future will be treated as the equivalent of no response unless the party so responding provides a specific reason for the information not being produced as required by the Rules of Civil Procedure, and also provides a specific date by which such information will be produced.

4. A response to a discovery request that does not provide the information or material requested but rather states that the party is continuing to look for or search for such information or material will be treated as the same as no response unless that party provides a clear description of where such information or material is normally located, who is normally in custody of such information or material, where the party has searched, the results of the search, as well as the identity of all persons who have engaged in such a search. The responding party shall also provide a clear explanation of the ongoing search and a specific date by which the search will be complete.

5. Whenever a party objects to discovery based upon a claim of attorney/client privilege, work product protection or any other privilege or protection, that party

Revised 7/25/24

13

shall produce a detailed privilege/protection log that includes at least the following for each such item for which privilege is claimed:

a.  The information required by C.R.C.P. 26(b)(5);

b.  The date of the information or material;

c.  All authors and recipients; and

d.  The specific privilege or protection which is claimed.

e.  The proponent of the privilege has the burden of establishing that privilege. Failure to comply with this paragraph 5 and Order for Discovery Protocol will constitute a waiver of the claimed privilege.

## DEPOSITIONS

1.  Depositions shall be conducted in compliance with the Colorado Rules of Civil Procedure.

2.  During all depositions, counsel shall adhere strictly to C.R.C.P. 30(d)(1) and (3). No objections may be made, except those which would be waived if not made under C.R.C.P. 32(d)(3)(B) (errors, irregularities), and those necessary to assert a privilege, to enforce a limitation on evidence directed by the Court, or to present a C.R.C.P. 30(d)(3) motion (to terminate a bad faith deposition). Objections to form shall be stated: "Objection as to form." Any further explanation is inappropriate and prohibited unless specifically requested by the attorney asking the question.

3.  There shall be no speaking objections. It is inappropriate and prohibited for an attorney, during the course of questioning, to advise a witness to answer "if you know," or "if you remember." It is similarly prohibited for an attorney during questioning to advise a witness not to speculate. All such questions shall be considered speaking objections. All deponent preparation shall be conducted prior to the commencement of the deposition and shall not take place during the course of the deposition.

4.  It is appropriate for the deponent to request clarification of a question. However, it is not appropriate for counsel to do so.

5.  A deponent and an attorney may not confer during the deposition while questions are pending. Similarly, neither a deponent nor counsel for a deponent may interrupt a deposition when a question is pending or a document is being reviewed, except as permitted by C.R.C.P. 30(d)(1).

6.  Counsel shall refrain from excessive objections that have the purpose or effect of disrupting the flow of questioning or the elicitation of testimony.

7.  Counsel may instruct the deponent not to answer only when necessary to preserve a

Revised 7/25/24

14

privilege, to enforce a limitation on evidence directed by the Court, or to present a motion under paragraph 3 of C.R.C.P. 30(d). Whenever counsel instructs a witness not to answer a question, counsel shall state on the record the specific reason for such an instruction, the specific question, part of a question or manner of asking the question upon which counsel is basing the instruction not to answer the question.

Revised 7/25/24

Vinesign Document ID: AB1696AF-C3CF-4ABD-BF-1D59B1D62C42321

☐FORM 1.2. DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT AND JURY DEMAND

DATE FILED
August 8, 2024 6:33 PM
FILING ID: 9151DDF685C1E
CASE NUMBER: 2024CV32427

| | |
|---|---|
| District Court Denver County, Colorado<br>Court Address:  1437 Bannock Street<br>Denver, CO 80202 | |
| Plaintiff(s): TIMOTHY VALDEZ<br>v.<br>Defendant(s): UBER TECHNOLOGIES, INC. [d/b/a "Uber"]; NEUTRON HOLDINGS, INC. [d/b/a "Lime"]; SOCIAL BICYCLES, INC.; SOCIAL BICYCLES HOLDINGS INC.; and SOCIAL BICYCLES LLC [each d/b/a "JUMP"]; and ZHEJIANG OKAI VEHICLE CO., LTD.; and OKAI, INC. [each d/b/a "OKAI"]. | ▲ COURT USE ONLY ▲ |
| Attorney or Party Without Attorney (Name and Address):<br><br>Sean M. Dormer, #44962<br>Amy N. Rogers, #49266<br>Dormer Harpring, LLC<br>3457 Ringsby Court, Unit 110<br>Denver, CO 80216<br><br>Phone Number: 303-756-3812<br>E-mail: attorneys@denvertrial.com<br>FAX Number: 303-477-7400 | Case Number:<br><br><br><br>Division          Courtroom |

**DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT AND JURY DEMAND**

1. This cover sheet shall be filed with the initial pleading of a complaint, counterclaim, cross-claim or third party complaint in every district court civil (CV) case. It shall not be filed in Domestic Relations (DR), Probate (PR),, Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases or in Water (CW) proceedings subject to sections 37-92-302 to 37-92-305, C.R.S. Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's show cause order requiring its filing.

2. Simplified Procedure under C.R.C.P. 16.1 **applies** to this case **unless** (check one box below if this party asserts that C.R.C.P. 16.1 **does not** apply):

The signed document can be validated at https://app.vinesign.com/Verify

☐ This is a class action, forcible entry and detainer, Rule 106, Rule 120, or other similar expedited proceeding, **or**

**X** This party is seeking a monetary judgment against another party of more than $100,000.00, exclusive of interest and costs, as supported by the following certification:

By my signature below and in compliance with C.R.C.P. 11, based upon information reasonably available to me at this time, I certify that the value of this party's claims against one of the other parties is reasonably believed to exceed $100,000.

**Or**

☐ Another party has previously filed a cover sheet stating that C.R.C.P. 16.1 does not apply to this case.

3. **X** This party makes a **Jury Demand** at this time and pays the requisite fee. *See* C.R.C.P. 38. (Checking this box is optional.)

**Date:** ___08/08/2024___

_____
Signature of Party

**Date:** __8/8/2024__

___/s/ Sean Dormer_____
**Signature of Attorney for Party (if any)**
Sean M. Dormer, #44962
Amy N. Rogers, #49266
*Attorneys for Plaintiff*

**NOTICE**
This cover sheet must be served on all other parties along with the initial pleading of a complaint, counterclaim, cross-claim, or third party complaint.